362 F.2d 224
 Louis HORNER, John L. Connolly, Victor Romero, James Riemers, and Hugh Bell, for the benefit of The Pacific Coast District of National Marine Engineers' Beneficial Association, an unincorporated association, Appellants,
v.
W. A. FERRON, Henry A. Borello, W. H. Buttram, Robert H. Horne, C. W. Jenkins, Harry Lewis, R. H. Robinson, F. E. Walton, C. Black, H. Coleman, S. R. Franks, George B. Salovich, Frode Anderson, Francis H. Rogers, Chemical Bank New York Trust Company, a New York corporation, and First Doe through Tenth Doe, inclusive, Appellees.
 No. 20120.
 United States Court of Appeals Ninth Circuit.
 May 24, 1966.
 Rehearing Denied June 30, 1966.
 
 COPYRIGHT MATERIAL OMITTED John F. Wells, John F. Banker, Alfred N. Gertmenian, Stark & Champlin, Oakland, Cal., for appellants.
 Martin J. Jarvis, Jarvis, Miller & Stender, San Francisco, Cal., for appellees.
 Before HAMLEY, MERRILL and ELY, Circuit Judges.
 HAMLEY, Circuit Judge:
 
 
 1
 The individual appellants herein are members of The Pacific Coast District of National Marine Engineers' Beneficial Association (District). On behalf of the District, they wish to sue its officials and others, named as appellees, to obtain an accounting and a judgment for damages in the amount of forty thousand dollars. Their proposed claim is based upon the theory that the union officials have violated their statutory fiduciary duties, as declared in section 501(a) of the Labor Management Reporting and Disclosure Act of 1959.[1]
 
 
 2
 Section 501(b) of the Act provides that no such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown.[2] The prospective plaintiffs filed such an application, consisting of a verified complaint, a letter to the judge of the district court, and two "declarations." After an exchange of affidavits and memoranda, and two hearings at which oral testimony was received, the district court entered an order denying the application, finding "lack of good cause" for commencing the action. This appeal followed.
 
 
 3
 A few days prior to the oral argument of this appeal, Louis Horner, the plaintiff who verified the application in the form of a complaint, died. We called for, and received, supplemental briefs bearing on the effect, if any, of Horner's death on the appeal and on the survival of the action.
 
 
 4
 We will first consider the issues raised by Horner's death. Appellees contend that the appeal has become "moot" because a proper verified complaint cannot be filed pursuant to section 501(b). They claim that if the proposed complaint is allowed to be filed, they will be deprived of their rights under section 501(b) to hold the verifier accountable for any false allegations.
 
 
 5
 A reading of section 501(b), however, reveals that the verification requirement pertains to the "application" for leave to file a complaint and not to the actual pleading. In this case, the application, in the form of a complaint, was properly verified when it was presented to the district court; at that time, Horner was alive and accountable for any falsehoods. The verification requirement of section 501(b) has been fulfilled. In the absence of an express statutory mandate, neither the complaint, considered apart from its role as an application, nor any other pleadings in this matter need be verified or accompanied by affidavit. See Rule 11, Federal Rules of Civil Procedure.
 
 
 6
 Horner's death does not revoke the validity of the verified application filed in the district court. Assuming, as appellees do, that Horner was acting as the agent of the other plaintiffs when he verified the application, his subsequent death does not deprive the remaining plaintiffs of the effectiveness of his acts performed while the agency relation existed.
 
 
 7
 Appellees further suggest that the cause of action asserted by Horner does not survive his death. But the authority most nearly in point supports the conclusion that the cause asserted by Horner, on behalf of the District, did not abate with his death. And this result is the same whether federal law (Spring v. Webb, D.C.Vt., 227 F. 481), or California law (Cal.Probate Code § 573), is applied. Certainly, with regard to the remaining plaintiffs, who stand ready and willing to carry on this litigation, there has been no abatement of the cause of action. See Edwards v. Mercantile Trust Co., S.D.N.Y., 121 F. 203.
 
 
 8
 We hold that the death of Louis Horner does not abate or terminate this action, nor does it render the cause moot.[3]
 
 
 9
 The essential allegations of the complaint appellants seek to file are as follows: Prior to April 1, 1962, the marine engineers in the affected area (Pacific Coast and Hawaii) were represented by various local labor organizations. On May 1, 1959, the officials of these locals purported to execute a "Marine Engineers' Beneficial Association Officers' Retirement and Severance Plan" (Severance Plan) with appellee Chemical Bank New York Trust Company as trustee. The purpose of the plan was to provide financial benefits for the officials of the locals, including the individual appellees, upon retirement or severance from their positions. These officials caused the Severance Plan to be executed without any valid authorization.
 
 
 10
 Continuing with the allegations of the proposed complaint: The District was created about April 1, 1962, and since that date has undertaken the operations and activities formerly conducted by the locals referred to above. Commencing about April 15, 1962, the officials of the District, appellees herein, have caused funds of the District to be paid to appellee bank under the Severance Plan. These payments were and are without valid authorization. By so doing, these officials have violated their fiduciary obligations to the District and its members under section 501 of the Act and under the laws of the State of California. They have further violated these duties by causing themselves to be named as beneficiaries of the Severance Plan without any valid authorization.
 
 
 11
 It is also alleged in the proposed complaint: The constitution and by-laws of the District do not provide any adequate internal remedies. The prospective plaintiffs have requested the District, its Executive Committee and officers to take such action as might be necessary in order to recover for the District the above-described payments to the appellee bank. They have refused to do so. A reasonable time for such action has now elapsed since the making of the requests.
 
 
 12
 The allegations of the complaint were explained, amplified or disputed in the affidavits and oral testimony received at the hearings before the district court. Appellees there advanced four reasons why the application for leave to file the complaint should be denied. Appellants argued in the district court, and contend here, that none of these reasons is adequate to support the order under review. Appellees, on the other hand, contend here not only that each such reason is individually sufficient to sustain the court order, but that there are also other reasons, not advanced in the district court, which in any event call for affirmance.
 
 
 13
 Before dealing with these matters some preliminary observations concerning the scope of application proceedings under section 501(b) are in order. The requirement of section 501(b) that a plaintiff in such an action show "good cause" before being entitled to file the complaint is intended as a safeguard to the affected union against harassing and vexatious litigation brought without merit or good faith. Highway Truck Drivers and Helpers Local 107 v. Cohen, E.D.Pa., 182 F.Supp. 608, 622, fn. 10, aff'd, 3 Cir., 284 F.2d 162.
 
 
 14
 The allegations of the verified complaint may be sufficient to enable the court to determine whether there is "good cause." See Executive Board, Local 28, I.B.E.W., v. International Brotherhood of Electrical Workers, D.Md., 184 F.Supp. 649, 653. Thus section 501(b) provides that such an application may be made ex parte. But the court may, on its own motion, call for a hearing, or may grant the defendant's motion for a hearing.[4]
 
 
 15
 At such a hearing, if one is called, the court may, if it chooses, look somewhat beyond the complaint in determining whether the plaintiff has made the "good cause" showing required by section 501(b). Thus if the defendant can establish, by undisputed affidavit, facts which demonstrate that the plaintiff is not a member of the defendant union, or that the action is outlawed by a statute of limitations, or that the action cannot succeed because of the application of the principles of res judicata or collateral estoppel, or that plaintiff has not complied with some controlling condition precedent to the bringing of such a suit, then although these defects do not appear on the face of the complaint, they may warrant denial of the application.
 
 
 16
 However, we think it inappropriate to consider, at such a hearing, defenses which require the resolution of complex questions of law going to the substance of the case. Defenses of this kind should be appraised only on motion for summary judgment or after a trial. Defenses which necessitate the determination of a genuine issue of material fact, being beyond the scope of summary judgment procedure,[5] are a fortiori, beyond the scope of a proceeding to determine whether a section 501(b) complaint may be filed. Defenses involving disputed questions of fact should be appraised only after a trial at which the parties and the court can have the benefit of a complete inquiry, assisted by such pre-trial discovery as may be undertaken.[6]
 
 
 17
 Having in mind this limited scope of proceedings on a section 501(b) application, we turn to the consideration of whether the order of denial should be sustained. The district court did not indicate which one or more of the four reasons for denial advanced by appellees in that court, had been accepted as the basis for the order. Thus if any one of them was appropriate to be considered, and was adequate, the order should be affirmed.[7]
 
 
 18
 The first reason advanced by appellees in the district court why the application should be denied involves the principles of res judicata and collateral estoppel. Appellants had previously instituted an action (No. 41678) which is still pending in the same district court. In that action appellants are attempting to recover funds paid into the Severance Plan prior to formation of the District, relief more limited than that which was sought in the complaint which they were not permitted to file. In the first action, appellants moved for leave to file an amended complaint in which they would have added the District and the National Marine Engineers' Beneficial Association as defendants. The district court denied the motion to amend, and no appeal from the denial was taken. Appellees, in resisting the application to file the complaint in the instant proceeding, contended that the refusal to permit the filing of the amended complaint in the first action was sufficient justification for the district court's determination that good cause for permitting the filing of the complaint in the present proceeding did not exist.[8]
 
 
 19
 We assume for present purposes that the identity of parties and subject matter was sufficient to give application to the doctrine of res judicata or collateral estoppel. Several grounds were urged upon the court in Action No. 41678 why the motion to file the amended complaint should be denied. That court appears not to have stated, in its order of denial, which of these grounds it was relying upon. This being the case, that order cannot be taken as res judicata as to any of the grounds urged. See Scrofani v. Miami Rare Bird Farm, Inc., 5 Cir., 208 F.2d 461, 464. For the same reason, such an order cannot work a collateral estoppel.
 
 
 20
 Moreover, one of the grounds urged upon the court for denying leave to file the amended complaint in Action No. 41678 was that appellants had not alleged that they had made the preliminary request of union officials to take remedial action, as required by section 501(b). Counsel for appellees thought this was probably the basis of the district court order.[9] This is a procedural ground which is capable of correction. If this was actually the ground on which the motion to file the amended complaint was denied it could not, by operation of the doctrine of res judicata or collateral estoppel, prevent appellants from correcting the procedural mistake in a subsequent and independent action, and this they have done. See Bland v. Connally, 110 U.S.App.D.C. 375, 293 F.2d 852, 855.
 
 
 21
 In any event, denial of the motion to file the amended complaint, made in Action No. 41678 which is still pending, was not a final and appealable order. See Hancock Oil Co. v. Universal Oil Products Co., 9 Cir., 120 F.2d 959, 960; National Machinery Co. v. Waterbury Farrel Foundry and Machine Co., 2 Cir., 290 F.2d 527, 528. Since the denial of that motion might yet be overturned in a future appeal in Action No. 41678 (unless rendered moot by the present proceedings) that unreviewed order of denial could hardly serve as res judicata or work a collateral estoppel in this case.
 
 
 22
 The second reason advanced by appellees in the district court why the application should be denied was that the proposed complaint predicates invalidity of appellees' union activities only on lack of proper union authorization when the Severance Plan was established, but assuming this to be true the plan has, since then, been ratified by the union membership. Accordingly, appellees contended, appellants did not show "good cause" to bring the proceeding, as required by section 501(b).
 
 
 23
 No District-wide vote specifically referring to the Severance Plan has ever been taken. However, appellees argue that votes taken at five branch meetings held in San Francisco, Wilmington (California), Seattle and Portland, at which motions to direct union officials to take necessary action to recover union contributions to the Severance Plan, were defeated, or such action by other branches was concurred in, constituted implied ratification of the plan. Another branch vote relied upon, taken in San Francisco, was one approving action of the District's Executive Committee, authorizing contributions to the Severance Plan.
 
 
 24
 This defense presents a serious question of law, going to the merits of the case, as to whether District ratification may be implied from branch votes on motions not specifically addressed to the question of ratification. Moreover, genuine issues of fact must be resolved before the merits of this defense can be determined. Appellants contended in the district court, and here, that there was inadequate disclosure of pertinent facts and that, on the contrary, it had been affirmatively misrepresented to the members that the plan had been validly authorized at its inception.[10] They also contended that appellee Ferron dominated and controlled the meetings at which such votes were taken. Accordingly, giving application to the principles announced above, this second reason advanced by appellees in the district court why the application should be denied could not, whatever its merits may ultimately be shown to be, warrant denial of the application.
 
 
 25
 The third reason advanced by appellees in the district court was that appellants must first exhaust all reasonable intraorganizational remedies before filing a section 501(b) application. The proposed complaint, appellees assert, makes no attempt to allege recourse to the "myriad" of remedies provided by the by-laws of the District, therefore, appellees argued, appellants did not show "good cause" to bring this proceeding.
 
 
 26
 It is a condition precedent to a suit under section 501(b), that the plaintiff, as a member of the labor organization, request that organization or its governing board or officers to sue or recover damages or secure an accounting or other appropriate relief from the asserted violations of fiduciary duties defined in section 501(a). The proposed complaint alleges fulfillment of this condition precedent. Section 501(b) makes reference to no other intraorganizational remedies which must be pursued. It follows that the pursuit of other internal remedies which may be available need not be alleged to show "good cause," or proved to prevail on the merits. See Holdeman v. Sheldon, S.D.N.Y., 204 F. Supp. 890, 896, aff'd, 2 Cir., 311 F.2d 2.
 
 
 27
 The fourth reason advanced by appellees in the district court why the application should be denied was that the complaint does not conform to the requirements of Rule 23(b), Federal Rules of Civil Procedure, relating to secondary actions by shareholders. Therefore, appellees argued, appellants did not show "good cause" to bring this proceeding.
 
 
 28
 Rule 23(b) pertains to secondary actions brought by the shareholders of an incorporated or unincorporated association. It requires that in an action, brought to enforce a secondary right on the part of one or more such shareholders, the complaint shall contain certain averments. One of these is that the complaint shall set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making the effort. Appellees argued, in effect, that in failing to allege that they pursued available internal remedies, appellants failed to comply with this requirement of Rule 23(b).
 
 
 29
 Section 501(b), as we have said, requires no allegation or proof as to the pursuit of internal remedies other than the making of the request referred to in that statute. This being so, Rule 23(b), which in any event relates only to "shareholders," and could therefore not include members of a labor organization, is inapplicable.
 
 
 30
 Appellees argue here, but did not argue in the district court, that the district court lacked subject-matter jurisdiction to entertain this proceeding on the merits and appellants therefore did not show "good cause" to bring it. This argument is predicated on the fact that the Severance Plan, which appellants say was invalidly adopted, was first established on May 1, 1959, and the Act under which the suit is proposed to be brought did not become effective until September 14, 1959.
 
 
 31
 If appellees were being charged with participating in the initial adoption of the Severance Plan in May, 1959, or with making payments thereunder prior to the effective date of the Act, this argument would have force. The Act is not to be applied retroactively in either criminal or civil proceedings. See Woxberg v. United States, 9 Cir., 329 F.2d 284, 292-293; Holton v. McFarland, D.C.D.Alaska, 215 F.Supp. 372, 376; Flaherty v. McDonald, D.C.S.D.Cal., 183 F.Supp. 300, 304.
 
 
 32
 Appellants, however, contend that the Severance Plan is invalid not because it was adopted in violation of the subsequently-enacted Act, but because it was not authorized in the manner required by the constitution, by-laws and other governing rules of the labor organizations which purported to adopt them. Moreover, appellants do not charge appellees with any misfeasance or malfeasance in connection with the adoption of the plan, or because of any payments made before the Act became effective. They charge only that, after the District was created on April 1, 1962, which was more than a year and a half after the Act became effective, appellees applied the District funds under the plan and designated themselves as beneficiaries thereunder, and that this was improper and unauthorized because the plan had never been validly adopted.
 
 
 33
 Since the alleged misconduct occurred after enactment of the statute, the district court did not lack subject-matter jurisdiction to entertain this proceeding on the merits.
 
 
 34
 Appellees present several additional arguments in this court which they did not make in the district court. They contend that: (1) Louis Horner, who verified the proposed complaint and filed supporting papers was not a member in good standing of the District, and was a pensioner and not an active seaman; (2) of the four remaining individual appellants, only one, Hugh Bell, was an active seaman and the record indicates that he did not make any prior demand requesting union action; (3) the Severance Plan was properly adopted; and (4) the proposed complaint is stale and is barred by the statute of limitations.
 
 
 35
 We decline to consider these arguments, none of which go to jurisdiction, since they were not presented in the district court as grounds for denying the application.
 
 
 36
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 73 Stat. 535, 29 U.S.C. § 501(a) (1964)
 
 
 [2]
 Section 501(b) reads in part:
 "(b) * * * When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte." 29 U.S.C. § 501(b) (1964).
 
 
 [3]
 It has been brought to our attention that subsequent to the oral argument of the appeal of this action, Mr. Ray Robinson, one of the defendants, died. Presumably, appellants will make an appropriate amendment to their complaint before it is filed, omitting this party
 
 
 [4]
 In this case appellants did not seek ex parte consideration of their application but notified appellees of the time and place the application would be presented to the court. As before indicated, hearings were thereafter held
 
 
 [5]
 See Rule 56(c), Federal Rules of Civil Procedure
 
 
 [6]
 Pre-trial discovery is not available to a plaintiff suing under section 501(b), until after leave to file the complaint has been granted
 
 
 [7]
 Findings of fact and conclusions of law were not necessary. However, where, as here, alternative grounds for action are urged upon the district court, it is of assistance to the appellate court, in reviewing such action, for the district court to state the specific grounds relied upon. While we could here remand so that this could be done, we elect not to do so
 
 
 [8]
 This argument was urged in the district court but the controlling principle was there referred to as the "law of the case." This was probably due to the uncertainty that existed at the time of the first hearing on the instant application whether the proposed complaint was to be considered in Action No. 41678
 
 
 [9]
 At the first hearing on the instant application, counsel for appellees advised the court:
 "* * * I might state to the Court, when the matter came up initially, one of the reasons stated in opposition to permission to file the amended complaint was that at that time they had made no demand upon the union for action. In addition, there were four other matters which were pointed out to the Court which the Court did not reach at that time and they were that they did not exhaust their administrative remedies in the union itself."
 
 
 [10]
 Ratification of a fiduciary's unauthorized acts cannot be effectuated unless there has been a full disclosure of the facts. See Gaynor v. Buckley, 9 Cir., 318 F.2d 432, 435; Central Ry. Signal Co. v. Longden, 7 Cir., 194 F.2d 310, 320